## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MICHAEL A. MOHR, D. JACK SAWYER, JR., and TODD TAUTFEST<br><br>    Plaintiffs,<br><br>  v.<br><br>BANK OF NEW YORK MELLON CORPORATION,<br><br>    Defendant. | CIVIL ACTION NO.<br>1:09cv2999-TWT |

## ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND DENYING DEFENDANT'S MOTION FOR TEMPORARY RESTRAINING ORDER WITH RESPECT TO CERTAIN RESTRICTIVE COVENANTS

The Court has read and considered the Verified Complaint and Motions for Temporary Restraining Order and Preliminary Injunction filed by Plaintiffs Michael A. Mohr, D. Jack Sawyer, Jr., and Todd Tautfest as well as Defendant Bank of New York Mellon Corporation's Motion for Temporary Restraining Order, Motion for Stay, and Opposition in Response to Plaintiff's Motions for Temporary Restraining Order and Preliminary Injunction. The Court has also considered all evidence filed in support of, and in opposition to, the parties' motions. Additionally, the Court conducted a hearing on November 10, 2009,

during which counsel for the parties presented argument on their respective

motions.

Now, therefore, having read and considered the parties' written submissions

and the argument of counsel, the Court hereby **FINDS and ORDERS** as follows:

Plaintiffs have demonstrated a substantial likelihood of success on the merits

of their claims.  Specifically, the Court finds that Plaintiffs Sawyer and Mohr have

established that the noncompetition and nonsolicitation covenants[1] contained in the

---

[1]  The noncompetition covenant at issue is contained in § 5.10 of a document entitled "Asset Purchase Agreement By and Among the Boston Company, Inc., The Arden Group, Inc., and Certain Other Persons Dated as of April 4, 2003."  In pertinent part the agreement provides:

(a)  In view of the fact that any activity of the Selling Parties in violation of the terms of this Section 5.10 would deprive Purchaser of the benefits of its bargain hereunder and under the Related Documents, and to preserve the goodwill associated with the Business, each Selling Party hereby agrees that during the Noncompetition Period such Selling Party will not, without the express written consent of Purchaser, directly or indirectly, anywhere within fifty (50) miles of any city or town listed on Schedule 9 (collectively, the "Restricted Territory"), engage, directly or indirectly, in any capacity (whether as owner, part-owner, shareholder, member, partner, director, officer, trustee, employee, agent or consultant, or in any other capacity), in any business, organization or person other than Purchaser (or any Affiliate of Purchaser or any Person deriving title from Purchaser to the assets of the Company and the accompanying goodwill purchased hereunder (any such person, a "Successor")) whose business, activities, products or services are similar to providing investment advisory or investment management services, or any Fiduciary Services, to individual or institutional customers.  Notwithstanding the foregoing, subject to the terms of Section 5.08(b), the Shareholders shall be permitted to continue to provide Fiduciary Services with respect to any Existing Fiduciary Appointments; provided, however, in the event, prior to the end of the Noncompetition Period, (x) the employment of any Shareholder providing Fiduciary Services with respect to any Existing Fiduciary Appointments shall terminate, (y) such Shareholder shall continue to provide Fiduciary Services with respect to any Existing Fiduciary Appointments, and (z) the agreement for Purchaser (or any Successor) to provide investment management services with respect to any such Existing Fiduciary Appointments is terminated (other than at the direction of Purchaser or any Successor), then such Shareholder shall promptly pay to Purchaser, by check or wire transfer to the bank account designated by Purchaser in writing, an amount equal to the Allocated Value of the Customer accounts associated with such Existing Fiduciary Appointments.
(b)  For purposes of this Agreement, the "Noncompetition Period" shall mean the period commencing on the Closing Date and terminating:
(i)     With respect to the Company, five (5) years from the Closing Date; and
(ii)    With respect to any Selling Party who is a Continued Employee, the later of (y) the fifth (5th) anniversary of the Closing Date or (z) twelve (12) months after the termination of such Continued

Asset Purchase Agreement and their Employment Agreements are likely ancillary to employment relationships and, therefore, subject to strict scrutiny.  In making this determination, the Court has reviewed the totality of the circumstances as reflected by the evidence presented by the parties, including *inter alia*, the Plaintiffs' status as employees at will, the lapse of time between the asset sale and Plaintiffs' departure, the attendant changes in Plaintiffs' employment with their employers, and the terms of the relevant agreements, including the fact that the noncompetition and nonsolicitation covenants are tied to the termination of Plaintiffs' at-will employment.  See Palmer & Cay, Inc. v. Marsh & McLennan Cos. Inc., 404 F.3d 1297, 1304 (11th Cir. 2005); Ins. Ctr. Inc. v. Hamilton, 218 Ga.

---

Employee's employment with Purchaser or an Affiliate of Purchaser (except as otherwise provided in Section 5.10(f) below).

As to Mohr and Sawyer, the nonsolicitation covenants at issue are set forth in § 3.05 of identical Employment Agreements dated June 30, 2003, by and between Mohr and Sawyer, respectively and Mellon Private Trust Company, National Association.  In pertinent part those covenants provide:

Solicitation of Clients.  Employee recognizes and acknowledges that it is essential for the proper protection of Confidential Information that Employee be restrained from soliciting business of or doing business with Customers (as defined below) for any business purpose, other than Mellon's own business purpose.  During the Restricted Period, Employee shall not, in any capacity, directly or indirectly , (i) solicit the Asset Management Services (as defined below) business of any Customer for any other person or entity, (ii) divert, entice, or otherwise take away from the Company the Asset Management Services business or patronage of any Customer, or attempt to do so, or (iii) solicit or induce any Customer to terminate or reduce its business relationship with the Company with respect to Asset Management Services.  For purposes of this Agreement, "Asset Management Services" shall mean providing investment advisory or investment management services, or any Fiduciary Services (as such term is defined in the Purchase Agreement), to individual or institutional customers.  For purposes of this Agreement, "Customer" shall mean any person or entity (a) who (1) received Asset Management Services from the Seller any time during the two (2) year period immediately preceding the Effective Date and (2) received Asset Management Services from the Seller, the Company or an affiliate of the Company at any time during the two (2) year period immediately preceding the date of termination of Employee's employment with the Company, or (b) who Employee contacted, directly or indirectly, in whole or in part, on behalf of Company to provide Asset Management Services within the two (2) year period immediately preceding the date of termination of Employee's employment with the Company.

597 (1963); Arnall Ins. Agency, Ins. v. Arnall, 196 Ga. App. 414 (Ga. App. 1990); Watkins v. Avnet, Inc., 122 Ga. App. 474 (1970).

Under the strict scrutiny standard, the noncompetition provision contained in the Asset Purchase Agreement is overly broad and unenforceable because, among other things, it purports to restrict Sawyer and Mohr from competing "in any capacity," is otherwise overbroad as to scope and is not appropriately limited geographically. Stultz v. Safety & Compliance Mgmt., 285 Ga. App. 799, 802 (2007); Capricorn Sys., Inc. v. Pednekar, 248 Ga. App. 424, 426 (2001). Similarly, the nonsolicitation provision in the Employment Agreements is overly broad in that it lacks a geographic restriction, yet attempts to prohibit Sawyer and Mohr from soliciting clients with whom they had no contact during their employment with Defendant. Fellows v. All Star, Inc., 272 Ga. App. 262 (2005).[2]

The restrictive covenant at issue with respect to Plaintiff Tautfest is contained in a Nonsolicitation and Confidentiality Agreement, which was entered into in connection with Tautfest's at-will employment. The Tautfest Agreement contains a choice of law provision electing the application of Massachusetts law. The Agreement also contains a "permissive" choice of forum provision, in which

---

[2] Further, the Court finds that even if the covenants are properly viewed as ancillary to the sale of business, then the same are nevertheless overly broad as to scope, territory, and time. The Court would, therefore, "blue pencil" such covenants to narrow their application. Drumheller v. Drumheller Bag & Supply, 420 S.E2d 331 (Ga. Ct. App. 1992).

the parties consent to jurisdiction in Massachusetts. Sitting in diversity, this Court follows the choice of law rules of the State of Georgia. McGow v. McCurry, 412 F.3d 1207, 1217 (11th Cir. 2005).[3]

Georgia courts will not apply the law of a jurisdiction chosen by parties in a contract where application of the chosen law would either contravene the policy of Georgia, or would be prejudicial to the interests of Georgia. Thus, a Georgia court will not enforce a restrictive covenant contract under the laws of a foreign state if the contract is "distasteful" to the values and policies of Georgia. Enron Capital & Trade Resources Corp. v. Pokalsky, 227 Ga. App. 727, 730 (1997); Hulcher Svcs., Inc. v. R.J. Corman R.R. Co., L.L.C., 247 Ga. App. 486 (2000) (refusing to honor choice of law clauses if chosen law would contravene Georgia public policy). Massachusetts's law concerning restrictive covenants would be contrary to Georgia's public policy because, *inter alia*, Massachusetts courts are permitted to modify overbroad employment covenants to narrow the restriction to that extent needed to protect the employer's legitimate interest. See Pettingwell v. Morrison, Mahoney, & Miller, 426 Mass. 253, 255 (1997) (noting that Massachusetts courts

---

[3] Relying upon the forum selection clause, Defendant urges the Court to stay these proceedings and forego ruling because Defendant intends to request a change in venue. The Court denies Defendant's motion to stay. Tautfest is a Georgia resident who entered into the Agreement at issue in Georgia and worked for Defendant in Georgia. The mere existence of a permissive forum selection clause does not remove Plaintiff's right to chose Georgia as the forum for this dispute. Snapper Inc. v. Redan, 171 F.3d 1249, 1260 (11th Cir. 1999).

enforce overbroad restrictive covenants "to the extent that they are reasonable");
All Stainless, Inc. v. Colby, 364 Mass. 773, 778-79 (1974) (upholding two-year
covenant not to compete but rewriting geographical area to territory serviced by
salesman prior to termination).  See, e.g., Keener v. Convergys Corp., 205 F.
Supp.2d 1374, 1377-80 (S.D. Ga. 2002) (refusing to apply Ohio law because, *inter
alia*, Ohio law allowed courts to modify overbroad restrictive covenant provision).

For these reasons, the Court finds that the issue of enforceability of the
nonsolicitation provision[4] contained in Plaintiff Tautfest's Nonsolicitation and
Confidentiality Agreement is governed by Georgia law.  Convergys Corp. v.
Keener, 582 S.E.2d 84 (Ga. 2003); Enron Capital & Trade Resources Corp. v.
Pokalsky, 227 Ga. App. 727, 730 (1997).  Under Georgia law, the provision is
unenforceable and void because it prohibits Tautfest from accepting unsolicited
business, is not limited to customers with whom Tautfest had contact, and

---

[4] The nonsolicitation covenant at issue in Tautfest's Agreement is set forth at ¶ 3 in a document entitled
Nonsolicitation and Confidentiality Agreement (Mellon's Private Wealth Management Group) dated October 24,
2005, and provides in pertinent part:

> During my employment and for twelve (12) months thereafter, regardless of the reason for
> termination, I shall not, in any capacity, directly or indirectly:
>
> (a)(i)      solicit the business or patronage of any Customer or Mellon Paid Channel for
> myself or on behalf of any person or entity other than Mellon for the purpose of providing
> Relevant PWM Services, (ii) divert, entice, or otherwise take away from Mellon the business
> or patronage of any Customer, or Mellon Paid Channel or attempt to do so, (iii) provide for
> myself or on behalf of any person other than Mellon any Relevant PWM Services to any
> Customer or any customer of a Mellon Paid Channel or (iv) solicit or induce any Customer or
> Mellon Paid Channel to terminate or reduce its relationship with Mellon.

otherwise purports to restrict Tautfest from engaging in competitive activities without a reasonable geographic limitation.  Singer v. Habif, Arogeti & Wynne, P.C., 250 Ga. 376, 377 (1982);  Fellows v. All Star, Inc., 272 Ga. App. 262 (2005).

The Court further finds that all Plaintiffs will suffer irreparable harm if the requested relief is not granted, the threatened injury to the Plaintiffs is greater than any damage the injunction may cause to Defendant, and the injunction will not disserve the public interest. Statewide Detective Agency v. Miller, 115 F.3d 904, 905-09 (11th Cir. 1997).

Finally, in fashioning the relief herein, the Court is mindful of the holdings of the Eleventh Circuit Court of Appeals in Palmer & Cay, Inc. v. Marsh & McClennon Cos., 404 F.3d 1297 (11th Cir. 2005) and Keener v. Convergys Corp., 342 F.3d 1264 (11th Cir. 2003).  As to Plaintiffs Mohr and Sawyer, the Court notes that they entered into the agreements in Georgia and both contain choice of law provisions electing Georgia law.  Further, the Asset Purchase Agreement also contains a permissive choice of forum provision providing for jurisdiction and venue in the state and federal courts located in Fulton County, Georgia.  Further, the Court finds that the employment activities of Plaintiffs Mohr and Sawyer during their relationship with Defendant and its predecessors were predominantly limited to the state of Georgia.  Therefore, the Court finds that the concerns

warranting the limitations imposed upon the injunctive relief at issue in <u>Keener</u> to be inapplicable to the injunctive relief sought by Mohr and Sawyer here.  However, the <u>Keener</u> ruling does limit the relief available to Plaintiff Tautfest as set forth below.

Accordingly, the Court hereby **GRANTS** Plaintiffs Michael A. Mohr and D. Jack Sawyer, Jr.'s Motion for Temporary Restraining Order and Preliminary Injunction and **GRANTS** Plaintiff Todd Tautfest's Motion for Temporary Restraining Order and Preliminary Injunction.  The Court **DENIES** Defendant Bank of New York Mellon Corporation's Motion for Temporary Restraining Order based on the noncompetition and nonsolicitation provisions at issue and **DENIES** Defendant Bank of New York Mellon Corporation's Motion for Stay.

It is therefore **ORDERED** that:

1.    Defendant Bank of New York Mellon Corporation and those acting in concert with it are hereby PRELIMINARILY ENJOINED from proceeding with or prosecuting any legal action against Plaintiff Sawyer and/or Plaintiff Mohr based on, relating to, or arising out of the nonsolicitation and noncompetition covenants contained in the Asset Purchase Agreement and the Employment Agreements that are the subject of this lawsuit until further order of the Court;

2.     Defendant Bank of New York Mellon Corporation and those acting in concert with it are hereby PRELIMINARILY ENJOINED from proceeding with, or prosecuting any legal action against Plaintiff Tautfest in any court in the State of Georgia based on, relating to, or arising out of the nonsolicitation covenant contained in the Nonsolicitation and Confidentiality Agreement until further order of the Court and,

3.     Defendant Bank of New York Mellon Corporation and those acting in concert with it are further hereby PRELIMINARILY ENJOINED from filing, proceeding with or otherwise prosecuting any action in any court premised upon the nonsolicitation covenant which would tend to limit or enjoin Plaintiff Tautfest's business activities within the State of Georgia, or otherwise seeking to enforce the nonsolicitation covenant contained in the Nonsolicitation and Confidentiality Agreement in the State of Georgia until further order of the Court.

SO ORDERED THIS 16th day of November, 2009, at 10 o'clock a .m.

/s/Thomas W. Thrash
JUDGE THOMAS W. THRASH, JR.
United States District Judge

## CERTIFICATION OF COUNSEL

Pursuant to the Court's oral order given at the hearing on November 10, 2009, this Proposed Order has been prepared by Plaintiffs' Counsel and provided to counsel for Defendant for review as to form. Counsel for Defendant has objected to the substance of the Proposed Order. Attached hereto as Exhibit A are Defendant's suggested revisions to the Proposed Order.

Prepared and submitted by:

This 12th day of November, 2009.

s/ M. Travis Foust
M. Travis Foust
Georgia Bar No. 104996
tfoust@fordharrison.com
John L. Monroe, Jr.
Georgia Bar No. 516190
jmonroe@fordharrison.com

Ford & Harrison LLP                         Attorneys for Plaintiffs
1275 Peachtree Street, N.E., Suite 600     Michael A. Mohr, D. Jack Sawyer, Jr.,
Atlanta, GA  30309                          and Todd Tautfest
Telephone: (404) 888-3800
Facsimile: (404) 888-3863

Atlanta:492880.1